No. 00-035

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 371

303 Mont. 450

16 P. 3d 373

STATE OF MONTANA,

Plaintiff and Respondent,

v.

MICHAEL SCHWEIN,

Defendant and Appellant.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable Susan P. Watters, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Brad L. Arndorfer; Arndorfer Law Firm, Billings, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; John Paulson,

Assistant Attorney General, Helena, Montana

Dennis Paxinos, Yellowstone County Attorney; Scott Twito, Ed Zink,

Deputy County Attorneys, Billings, Montana

Submitted on Briefs: November 9, 2000
Decided: December 28, 2000

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Michael Schwein (Schwein) appeals from a jury verdict in the Thirteenth Judicial District Court, Yellowstone County, finding him guilty of driving under the influence of alcohol. We affirm the judgment of the District Court.

¶2 The following issues are raised on appeal:

¶3 1. Did the District Court err in denying Schwein's motion to dismiss the DUI charge on the grounds that the State failed to prove that Schwein's vehicle was upon a way open to the public?

¶4 2. Did the District Court err in denying Schwein's motion for a mistrial on the grounds that the District Court had informed the jury that Schwein was being prosecuted for felony DUI?

¶5 3. Did the District Court err in admitting into evidence results of Schwein's breath test?

Factual Background

¶6 The facts in this case are not subject to dispute. Around 11 p.m. on March 13, 1999, Yellowstone County Deputy Sheriff Troy Kane (Kane) was driving down State Avenue in Billings when he noticed a black 1995 Chevrolet Corvette parked in the parking lot between the Moose Breath Saloon and Magic City Welding. Kane noticed that, although the car appeared to be unoccupied, its headlights were on. Kane stopped to investigate and found Schwein asleep in the driver's seat, sitting upright with his head tilted toward his

chest. Although Schwein had given his keys to the bar owner earlier in the evening, he testified at trial that he had retrieved an extra set from the underside of his car. Kane arrived to find the headlights and dashlights on and the keys in the ignition.

¶7 Kane knocked on the car window and Schwein woke up, startled, grabbed for the ignition keys and attempted, but was unable, to start the car. Kane told Schwein to take the keys out of the ignition and hand them to him, which Schwein did. Kane asked Schwein for his license and registration and, in doing so Kane detected the odor of alcohol on Schwein's breath. When asked by Kane, Schwein got out of the car. He refused, however, to perform the field sobriety maneuvers requested and refused to take the preliminary breath test. Kane then arrested Schwein for driving under the influence of alcohol. When Schwein agreed to take the breath test at the Yellowstone County Detention Facility it indicated that his blood alcohol concentration was .229.

## Discussion

¶8 1. Did the District Court err in denying Schwein's motion to dismiss the DUI charge on the grounds that the State failed to prove that Schwein's vehicle was upon a way open to the public?

¶9 We review the District Court's conclusion that the parking space is a "way of the state open to the public" as one of law. Our review of a conclusion of law is plenary. State v. Brander (1996), 280 Mont. 148, 150, 930 P.2d 31, 33.

¶10 In order to establish the offense of driving under the influence of alcohol, the State must prove that the defendant, while under the influence of alcohol, drove or was in actual physical control of a vehicle "upon the ways of this state open to the public." Section 61-8-401(1)(a), MCA.

¶11 In the present case, Schwein moved for a directed verdict of acquittal arguing that there was no evidence that the parking space in question was a "way of the state open to the public."

¶12 Schwein contends that he owns Magic City Welding and that he was parked in front of his own business in a parking space which he leases; that he was asleep and had no intention of driving.

¶13 The District Court, relying on our decision in State v. Weis (1997), 285 Mont. 41, 945

P.2d 900, concluded that the parking area between the saloon and the welding shop was a way open to the public and denied Schwein's motion for a directed verdict.

¶14 Weis, like Schwein, contended that he was not guilty of DUI because he was operating his vehicle, not on a way of the state open to the public but, rather, in Boulder Lane, which is a privately owned and maintained driveway. We rejected Weis' argument holding that our statutes are not so narrow as to include only those ways or places for travel which are legally dedicated to the public use. *Weis*, 285 Mont. at 43, 945 P.2d at 902. We noted that "ways of the state open to the public" is defined as including "any highway, road, alley, lane, parking area, or other public or *private place* adapted and fitted for public travel that is in common use by the public." *Weis*, 285 Mont. at 43, 945 P.2d at 902 (citing § 61-8-101(1), MCA).

¶15 Our decision in City of Billings v. Peete (1986), 224 Mont. 158, 729 P.2d 1268, is particularly relevant to the present dispute. In *Peete* we held that the parking garage of the Northern Hotel in Billings was a way of the state open to the public notwithstanding that access to the garage could only be obtained via one ramp and only upon obtaining a ticket from the attendant and payment of a fee. The hotel parking garage had a history of public use and the public was encouraged to use the facility. *Peete*, 224 Mont. at 162, 729 P.2d at 1270-71. Similarly, the parking lot here in question, though it includes privately leased spaces, is adapted and fitted for public travel and is in common use by the public and customers of adjoining businesses.

¶16 The District Court correctly concluded that the *Weis* decision is controlling and that the parking lot in question falls within the statutory definition of a "way of the state open to the public."

¶17 2. Did the District Court err in denying Schwein's motion for a mistrial on the grounds that the Court informed the jury that Schwein was being prosecuted for felony DUI?

¶18 It is within a district court's discretion to decide how to instruct the jury, taking into account the theories of contending parties. This Court will not overturn a district court for instructions given to a jury without an abuse of discretion. Hall v. Big Sky Lumber & Supply, Inc. (1993), 261 Mont. 328, 332, 863 P.2d 389, 392.

¶19 In its preliminary instructions to the jury at the beginning of the trial, the District Court advised the jury that, "[t]he State has charged the Defendant by Information, with

the offense of Driving or in Actual Physical Control of a Motor Vehicle While Under the Influence of Alcohol (Felony) . . . ."

¶20 Schwein contends that this instruction constituted evidence of prior crimes in violation of Rule 404(B), M.R.Evid. That is, once the jury was advised this was a felony DUI charge, it was aware that he had at least three prior DUIs on his record. Schwein's unspoken assumption is that the jurors would know that it is only the fourth DUI charge that constitutes a felony. *See* § 61-8-731, MCA.

¶21 The State points out that, prior to commencement of trial, the District Court provided counsel with copies of the court's proposed preliminary instructions which the court intended to read to the jury. Schwein did not object to the preliminary instructions at that time or immediately after they were read.

¶22 Furthermore, during voir dire, Schwein's counsel advised the prospective jurors that "[w]e're here today because Montana has a felony DUI law, you can be convicted of a felony, and that's why we're in District Court." Counsel specifically inquired whether any prospective jurors had any strong feelings about the fact that drunk driving can be a felony.

¶23 It was not until after the State had presented its first two witnesses and the court had advised counsel that they should not suggest to the jury what Schwein's sentence should or would be, that Schwein objected to the preliminary instruction and moved for a mistrial. The District Court determined that the objection was untimely, denied the motion, and agreed to eliminate any felony reference in the instructions at the end of trial.

¶24 We agree with the District Court that Schwein's objection to the preliminary instruction was untimely; if he had an objection to the preliminary instructions, he should have raised the objection prior to the court's reading of the instructions or immediately thereafter. Furthermore, any error in the preliminary instruction was harmless in light of defense counsel's voir dire of the jury panel in which he advised the panel that the case involved a felony DUI charge.

¶25 The District Court did not abuse its discretion in denying Schwein's motion for a mistrial.

¶26 3. Did the District Court err in admitting the results of Schwein's breath test?

¶27 The State filed a notice of its intent to offer into evidence the annual certification report of the forensic scientist with the Forensic Science Division of the Montana Department of Justice, in order to establish the accuracy of the Intoxilyzer 5000 instrument which was used to test Schwein's blood alcohol concentration. Schwein objected arguing that the annual certification reports were not crime lab evidence and were not business records.

¶28 We need not discuss the propriety of admitting the certification reports. Even assuming, without so holding, that the court erred, any such error was harmless since Schwein conceded from the beginning that he was too drunk to be driving. His defense was that he had no intention of driving, rather he was sleeping in a private parking space. Schwein's level of intoxication was not a disputed fact.

¶29 The District Court did not abuse its discretion in admitting the annual certification reports. The judgment of conviction is affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ KARLA M. GRAY

Justice Terry N. Trieweiler, dissenting.

¶30 I dissent from the majority opinion. I conclude that there was insufficient evidence to prove that the Defendant, Michael Schwein, operated or was in control of his vehicle "upon the ways of this state open to the public."

¶31 On the day of his arrest, Schwein had been drinking at a bar across the lot from his place of business. He left the bar on foot with the intention of spending the night at his shop. However, on his way to his shop, he encountered the owner of the bar who requested his car keys. Schwein gave the owner his car keys, but in the process also gave him the key to his shop. Therefore, he returned to his car where he went to sleep. That is

where he was found and arrested.

¶32 At the time of his arrest, Schwein's vehicle was parked in a space that he personally leased in front of his shop. During business hours, it is open to customers and no one else. After 5:00 p.m., it is not open to the public. In fact, cars have been towed from that location at Schwein's request.

¶33 At the time of his arrest the engine to Schwein's motor vehicle was not running. He had not operated the vehicle after drinking at the bar and he had no intention of doing so.

¶34 At the time of his arrest, the parking place in which Schwein's car was located was clearly not "open to the public."

¶35 Those decisions relied on by the majority are all clearly distinguishable from the facts in this case. *See State v. Weis* (1997), 285 Mont. 41, 945 P.2d 900; *Santee v. State* (1994), 267 Mont. 304, 883 P.2d 829; and *City of Billings v. Peete* (1986), 224 Mont. 158, 729 P.2d 1268.

¶36 In all of the cases relied on by the majority, the defendant was actually operating his vehicle at the time of his arrest. Furthermore, the defendant in each of the prior three cases was in an area that actually was "open to the public." Finally, in none of the three prior cases was the defendant on his own private property.

¶37 The purpose of our laws prohibiting operating a motor vehicle under the influence of alcohol or drugs is to preserve public safety. The result in this case accomplishes just the opposite. Had Schwein gotten into his vehicle and driven home, there is a chance that he would have arrived without detection. However, it would not have been safe for him to do so.

¶38 Schwein did the safest thing apparent to him in his intoxicated condition and he was a threat to no one. In spite of that fact, the majority opinion now extends the reach of the law beyond what was ever intended. I hope that our streets and highways are not a little more dangerous as a result.

¶39 For these reasons I dissent from the majority opinion. I conclude that there was insufficient evidence to convict Michael Schwein of operating or being in control of his vehicle while on a public way and under the influence of alcohol.

/S/ TERRY N. TRIEWEILER